[Cite as *Integrity Constr. II, Inc. v. Severino Constr., Inc.*, 2026-Ohio-3109.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Integrity Construction II, Inc.,  :

        Plaintiff-Appellee,  :  No. 25AP-138
                                       (C.P.C. No. 23CV-1981)

v.  :

                                      (REGULAR CALENDAR)

Severino Construction, Inc. et al.,  :

        Defendants-Appellants.  :

---

D E C I S I O N

Rendered on August 13, 2026

---

**On brief:** *Thomas Law, LLC, Ryan L. Thomas*, and *Megan A. Porter*, for appellee. **Argued:** *Megan A. Porter.*

**On brief:** *Hahn Loeser & Parks LLP, Gregory A. Thompson, Aaron S. Evenchik*, and *Samantha L. Shamhart*, for appellants. **Argued:** *Gregory A. Thompson.*

---

APPEAL from the Franklin County Court of Common Pleas

DINGUS, J.

{¶ 1} Defendants-appellants, James Severino, Jr. and J. Severino Construction, Inc. (collectively "Severino" or "Subcontractor"), appeal a judgment of the Franklin County Court of Common Pleas that denied Severino's motion to stay proceedings and compel arbitration against plaintiff-appellee, Integrity Construction II, Inc. ("Integrity" or "Lower-Tier Subcontractor"). For the reasons that follow, we affirm.

## I. Facts and Procedural History

{¶ 2} The litigation underlying this appeal arose from a construction project for a housing development. The project owner was Brynwood Reserve LLC ("Owner"). The general contractor for the project was Metro Development II, LLC ("Metro" or "Contractor"). In December 2021, Metro engaged Severino as a subcontractor for the

project, and it entered an agreement for Severino to clear and grade the land and install sanitary sewer lines, water lines, and storm sewer lines.

{¶ 3} The agreement between Metro and Severino was entitled "Subcontract Agreement," and it referred to the contract between Metro and the Owner as the "Prime Contract." The Prime Contract itself was not included in the record before the court. The Subcontract Agreement included various general terms and conditions, and it attached specific requirements regarding the scope of work, specifications, and schedule requirements as exhibits to the contract. The general terms of the Subcontract Agreement provided that the obligations under the Prime Contract would flow down from both the Owner to Severino and from Metro to Severino:

> Subcontractor binds itself to Contractor and Owner and is obligated to Contractor and Owner in the same manner and to the same extent that Contractor is bound and obligated to Owner under the Prime Contract.

(Subcontract Agreement, Section 1.1 at 1.) The Subcontract Agreement also provided that the Owner's rights against Metro under the Prime Contract would flow down to the Owner against Severino and to Metro against Severino:

> All rights which Owner may exercise and enforce against Contractor may be exercised and enforced by Owner against Subcontractor. . .
>
> . . .
>
> Contractor shall have the same rights and privileges against Subcontractor as the Owner in the Prime Contract has against Contractor.

*Id.* The Subcontract Agreement further obligated Severino to incorporate the terms of the Subcontract Agreement in any future contracts with lower-tier subcontractors: "Subcontractor shall bind lower tier subcontractors and suppliers to full compliance with the Contract Documents." *Id.*

{¶ 4} A section of the Subcontract Agreement governing disputes included a clause giving Metro the unilateral right to decide whether disputes with Severino should be resolved through arbitration or litigation:

> BINDING DISPUTES RESOLUTION. If a dispute arises between Contractor, and Subcontractor as to this Agreement or Subcontractor's Work that concerns only the parties hereto or other subcontractors on the Project, Subcontractor shall give Contractor written notice within three (3) days after the

> occurrence of the event giving rise to said claims. Otherwise, such claims will be deemed waived.
>
> Contractor shall have the right, in its sole and exclusive discretion, to elect whether the dispute will then be decided by arbitration or litigation . . .

(Subcontract Agreement, Section 6.1 at 7.)

{¶ 5} After Severino entered the Subcontract Agreement with Metro, Severino engaged Integrity as a Lower-Tier Subcontractor to perform a portion of Severino's work. Severino and Integrity formed three different agreements (the "Lower-Tier Agreements"). Specifically, on January 11, 2022, Integrity emailed two written proposals: one for work on underground utilities including water mains, storm sewers, and sanitary sewers, and another for topsoil removal, site grading, and topsoil replacement. Severino signed the utility work proposal on January 20, 2022, circled the estimate for sanitary sewer work, and added the handwritten note "Sanitary Sewer" above his signature. (Jan. 20, 2022 Sanitary Sewer Lower-Tier Agreement at 2.) He signed the topsoil and grading proposal the same day and added the handwritten note: "Dirt Work Per Metro Contract Doc." above his signature. (Jan. 20, 2022 Earthwork Lower-Tier Agreement at 2.) A few months later, Severino entered an agreement with Integrity to complete the installation of storm sewers. On May 3, 2022, Severino signed another copy of Integrity's January 2022 utility work proposal, this time circling the estimate for storm sewers, crossing out other estimates, and adding a handwritten note: "All Terms of Metro Development Contract Apply to Storm Sewer." (May 3, 2022 Storm Sewer Lower-Tier Agreement at 1.)

{¶ 6} Later in 2022, a dispute arose between Severino and Integrity regarding payment for Integrity's work on the project. Integrity sued Severino for breach of contract, unjust enrichment, fraud, and conversion, alleging that Severino failed to fully compensate Integrity for its work. In response, Severino filed a motion to compel arbitration pursuant to the terms of Severino's Subcontract Agreement with Metro. Severino included an affidavit stating that Severino had incorporated the terms of the Subcontract Agreement by reference into the Lower-Tier Agreements with Integrity, and that Severino provided a copy of the Subcontract Agreement to Integrity in January 2022.

{¶ 7} At a subsequent evidentiary hearing before a magistrate, Severino's witness admitted that Severino did not provide the full Subcontract Agreement to Integrity, and instead only provided a few of the documents that were attached to the contract outlining

the scope of work and schedule for the earthwork and utility work. The parties ultimately did not dispute that Severino failed to offer a copy of the full Subcontract Agreement to Integrity, and that Integrity failed to ask for a copy.

{¶ 8} The magistrate denied Severino's motion to compel arbitration. The magistrate's decision assumed, for the sake of argument, that Severino's handwritten additions to the Lower-Tier Agreements with Integrity were adequate to incorporate the terms of the Subcontract Agreement by reference. Even with such an assumption, the magistrate held that Severino's handwritten terms in the Lower-Tier Agreements were not adequate to allow Severino to stand in Metro's shoes and enforce Metro's arbitration provision in the Subcontract Agreement against Integrity.

{¶ 9} Severino filed objections to the magistrate's decision. After considering the parties' briefs and reviewing the magistrate's decision de novo, the trial court overruled Severino's objections and denied the motion to compel arbitration. Severino filed a timely notice of appeal, and the matter is now before this court.

## II. Assignments of Error

{¶ 10} Severino has failed to specify an assignment or assignments of error, but it presents the following arguments for our review:

> [I.] The Trial Court Erred in Finding that the Arbitration Provision in the Metro Contract Does Not Apply to Integrity.
>
> [II.] The Trial Court Failed to Address Gibbons-Grable, Which Defeats the Notion that Only Metro Could Compel Arbitration.
>
> [III.] The Trial Court Erred When It Improperly Shifted Integrity's Burden to Overcome Arbitrability to Severino.
>
> [IV.] Because All of Integrity's Claims Are Subject to Arbitration, They Should Have Been Stayed Pending Arbitration.

## III. Discussion

{¶ 11} When an appellate court reviews a trial court's denial of a motion to stay proceedings and compel arbitration, the appellate court employs de novo review to any questions of law, and it employs an abuse of discretion standard of review to any factual aspects of the decision. *Morris v. Morris*, 2010-Ohio-4750, ¶ 15 (10th Dist.). More often than not, appeals regarding arbitration stays involve questions of law "because such cases

generally turn on issues of contractual interpretation or statutory application." *Hudson v. John Hancock Fin. Servs., Inc.*, 2007-Ohio-6997, ¶ 8 (10th Dist.). The issue here is whether, pursuant to the terms of the Lower-Tier Agreements, Integrity agreed to give Severino the discretion to choose arbitration to resolve their disputes. Whether a party has agreed to submit disputes to arbitration is a question of law, subject to de novo review. *Rice v. Stuckey*, 2025-Ohio-2242, ¶ 31 (10th Dist.).

{¶ 12} An agreement to arbitration "is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). Although public policy favors arbitration, it cannot be used to "override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract." *Equal Emp. Opportunity Comm. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002). We therefore apply general principles of contract formation to determine if the parties intended to submit their disputes to arbitration. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

{¶ 13} When construing a contract, we generally "presume that the intent of the parties to a written contract is found in the writing of the contract itself." *Bank of New York Mellon v. Rhiel*, 2018-Ohio-5087, ¶ 20. We must give the terms of a contract their plain and ordinary meaning " 'unless another meaning is clearly apparent from the contents of the agreement. When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties.' " *Tera, L.L.C. v. Rice Drilling D, L.L.C.*, 2024-Ohio-1945, ¶ 11, quoting *Sunoco, Inc. (R&M) v. Toledo Edison Co.*, 2011-Ohio-2720, ¶ 37.

{¶ 14} Ohio law recognizes the doctrine of incorporation by reference as an exception to the general understanding that all agreed-upon terms must be contained in the language of the contract. *Volovetz v. Tremco Barrier Solutions, Inc.*, 2016-Ohio-7707, ¶ 26 (10th Dist.). Parties may incorporate a separate, unsigned document by reference into their contract as long as " 'the contract makes clear reference to the document and describes it in such terms that its identity may be ascertained beyond doubt.' " *Id*. at ¶ 27, quoting 11 Lord, *Williston on Contracts*, § 30:25, at 294-301 (4th Ed. 2012). The contract must also make clear that it is incorporating some or all of the terms of the referenced document into

the contract. *Volovetz* at ¶ 27. Although the word "reference" is in the phrase "incorporation by reference," the phrase "is a term of art, and not every reference is the equivalent to substantive incorporation." *United States ex rel. Ken's Carpets Unlimited, Inc. v. Interstate Landscaping Co., Inc.*, 1994 U.S. App. LEXIS 24419, *9 (6th Cir. Sept. 6, 1994). Accordingly, mere reference to the other document is not enough alone to incorporate the document's terms. *See Mkt. Ready Real Estate Servs., Inc. v. Weber*, 2013-Ohio-4879, ¶ 16 (10th Dist.) (statement in a contract that the agreement was "pursuant to" a separate contract was insufficient to incorporate the terms of the separate contract).

{¶ 15} Here we have three contracts between Severino and Integrity: the January 2022 Lower-Tier Agreement for utility work related to a sanitary sewer system, the January 2022 Lower-Tier Agreement for earthwork, and the May 2022 Lower-Tier Agreement for utility work related to a storm sewer system. The sanitary sewer system agreement contains no reference to Severino's Subcontract Agreement with Metro, and the note "Dirt Work Per Metro Contract Doc." in the earthwork agreement is a mere reference rather than an incorporation of the Subcontract Agreement. *See Mkt. Ready* at ¶ 16. Because the January 2022 Lower-Tier Agreements fail to incorporate the Subcontract Agreement, the arbitration provision within the Subcontract Agreement cannot apply.

{¶ 16} As for the May 2022 storm sewer agreement, it is likely that the Subcontract Agreement was incorporated by reference through Severino's handwritten note, "All Terms of Metro Development Contract Apply to Storm Sewer." (May 3, 2022 Storm Sewer Lower-Tier Agreement at 1.) But as the trial court held, even if we assume that the May 2022 storm sewer contract incorporated the Subcontract Agreement by reference, the language of the arbitration clause itself also needs to be capable of applying to Severino and Integrity to be relevant to their dispute. As noted above, the arbitration clause states that Metro "shall have the right, in its sole and exclusive discretion, to elect whether the dispute [between Metro and Severino] will then be decided by arbitration or litigation." (Subcontract Agreement, Section 6.1 at 7.) The plain language of the arbitration clause, by itself, cannot apply to Integrity.

{¶ 17} Severino asserts that, plain language notwithstanding, a separate flow-down provision allows Severino to stand in Metro's shoes and assume Metro's rights under the arbitration provision. This court has previously explained that "[f]low down provisions are

often used in construction subcontracts to create obligations between subcontractor and contractor that mirror the obligations between the contractor and the project owner." *KeyBank Natl. Assn. v. Columbus Campus, L.L.C.*, 2013-Ohio-1243, ¶ 22 (10th Dist.). Flow-down provisions can also create rights and privileges that the contractor may assert against the subcontractor that mirror the rights and privileges that the project owner may assert against the contractor. *Id.* at ¶ 33.

{¶ 18} Severino concedes that the Lower-Tier Agreements do not contain any flow-down provisions. Severino nevertheless argues that because the Lower-Tier Agreements incorporate the Subcontract Agreement by reference, and because the Subcontract Agreement contains flow-down provisions from the Owner and Metro to Severino, it follows that the Lower-Tier Agreements incorporate those flow-down provisions and therefore allow Severino to assume Metro's right to compel arbitration. In support, Severino cites to the following cases: *KeyBank*; *Exchange Mut. Ins. Co. v. Haskell Co.*, 742 F.2d 274 (6th Cir. 1984); *Rorick's, Inc. v. Corporex Dev. & Constr. Mgt., L.L.C.*, 2017-Ohio-8694 (5th Dist.); and *Gibbons-Grable Co. v. Gilbane Bldg. Co.*, 34 Ohio App.3d 170 (8th Dist. 1986).

{¶ 19} None of the cited cases involve a contract chain involving an owner, a general contractor, a subcontractor, and a lower-tier subcontractor. The dispute in *KeyBank* arose between lenders who had a construction mortgage lien and certain subcontractors who had mechanic's liens related to a failed construction project. *KeyBank* at ¶ 9-11. The dispute in *Exchange Mut. Ins. Co.* arose between a general contractor and an insurance company that had issued a performance bond for a subcontractor. *Exchange Mut. Ins. Co.* at 275. And both *Rorick's* and *Gibbons-Grable* involve a dispute between a general contractor and a subcontractor. *Rorick's* at ¶ 8-9, 17; *Gibbons-Grable* at 171.

{¶ 20} The question in *KeyBank* and *Gibbons-Grable* was whether the subcontractor had assumed the general contractor's obligations from the general contractor's prime contract with the owner. *KeyBank* at ¶ 18; *Gibbons-Grable* at 172. The answer to that question was "yes" because, unlike the Lower-Tier Agreements in this case, the subcontracts included flow-down provisions. *KeyBank* at ¶ 19, 28; *Gibbons-Grable* at 173. In *Exchange Mut. Ins. Co.*, the question was whether a surety had assumed the obligation to use arbitration from the general contractor's prime contract with the owner.

*Exchange Mut. Ins. Co.* at 275. The answer to that question was "yes" because the subcontract contained a flow-down provision from the prime contract, and because the performance bond contained the equivalent of a flow-down provision by making the surety bound and jointly liable with the subcontractor under the terms of the subcontract. *Id.* at 275-276.

{¶ 21} The question in *Rorick's* was whether the subcontractor had assumed the general contractor's limited obligation to use arbitration from the prime contract, thereby allowing the subcontractor to avoid the unlimited arbitration clause that was incorporated by reference in the subcontract. *Rorick's* at ¶ 37. The answer to that question was "no" because, like the Subcontract Agreement in this case, the arbitration clause in the prime contract applied to specific parties only, and like the Lower-Tier Agreements in this case, the subcontract did not contain a flow-down provision that allowed the subcontractor to step into the general contractor's shoes. *Id.* at ¶ 39.

{¶ 22} None of the cited authorities support Severino's argument. *KeyBank*, *Gibbons-Grable*, and *Exchange Mut. Ins. Co.* are factually distinguishable, and the analysis in *Rorick's* runs directly counter to Severino's argument. They do not stand for the proposition that incorporation by reference alone causes the flow down of rights or obligations in a way that is not reflected in the language of either the contract or the incorporated document.

{¶ 23} The arbitration clause in this case is not articulated as a mere term in the contract that automatically applies to all parties regarding any dispute arising out of the contract. *Compare Rorick's* at ¶ 30 ("[a]ny claim" related to the contract "shall be subject to arbitration"); *Gibbons-Grable* at 172 (any unresolved dispute regarding additional cost "shall be decided by arbitration") (emphasis deleted). Instead, the Subcontract Agreement gives Metro the "right, in its sole and exclusive discretion, to elect whether the dispute [between Metro and Severino] will then be decided by arbitration or litigation." (Subcontract Agreement, Section 6.1 at 7.) The flow-down provisions in the Subcontract Agreement allow *obligations* to flow down to Severino, but they do not allow any of the Owner's or Metro's *rights* to flow down to Severino:

> [Severino] binds itself to [Metro] and Owner and is obligated
> to [Metro] and Owner in the same manner and to the same
> extent that [Metro] is bound and obligated to Owner under the

> Prime Contract. All rights which Owner may exercise and enforce against [Metro] may be exercised and enforced by Owner against [Severino]. . .
>
> . . .
>
> [Metro] shall have the same rights and privileges against [Severino] as the Owner in the Prime Contract has against [Metro].

(Subcontract Agreement, Section 1.1 at 1.)

{¶ 24} Accordingly, nothing in the plain language of the Subcontract Agreement allowed Severino to step into Metro's shoes and apply Metro's right to arbitration against another party. And because Severino merely incorporated the Subcontract Agreement by reference in its May 2022 Lower-Tier Agreement with Integrity without adding a flow-down provision of its own, Severino had no right to compel Integrity to arbitrate their dispute. We therefore reject Severino's arguments and hold that (1) the trial court correctly concluded that Severino could not enforce the arbitration clause in the Subcontract Agreement against Integrity, (2) the court's failure to address *Gibbons-Grable* was inconsequential because the case was inapposite, (3) the court's application of the plain language of the contracts did not involve any improper burden shifting, and (4) none of Integrity's claims against Severino needed to be stayed pending arbitration.

## IV. Disposition

{¶ 25} Having rejected all of Severino's arguments, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

JAMISON and LELAND, JJ., concur.

————————————